## No. 13,811.

STATE IN RELATION TO McKINNEY ET AL. *v.* LOWRY ET AL.
(66 P. [2d] 334)

Decided March 15, 1937.

Mr. GEORGE G. Ross, for plaintiff in error.

Mr. TELLER AMMONS, Mr. ROBERT J. KIRSCHWING, for defendants in error.

*In Department.*

MR. JUSTICE BAKKE delivered the opinion of the court.

THIS is an action to review certain contempt proceedings had in the district court for the City and County of Denver. The plaintiffs in error were relators below and defendants in error were respondents.

■ This court has on several occasions held that in reviewing contempt proceedings our inquiry is confined to the determination of whether the trial court had jurisdiction and regularly pursued its authority. *Fort v. People ex rel.*, 81 Colo. 420, 256 Pac. 325, and *Norquist v. Norquist*, 89 Colo. 486, 4 P. (2d) 306.

To determine whether the proceedings below met these requirements we shall briefly review what transpired.

The original proceeding, of which the contempt proceedings complained of were a part, was based upon a petition for a peremptory writ of mandamus brought by certain negroes to compel the respondents, who were part of the city administration of the City and County of Denver, being Walter B. Lowry, manager of improvements and parks, and A. S. Fogg, commissioner of supplies, respectively, to comply with the Civil Rights statutes, sections 4131, 4133, 4134 and 4135, C. L. 1921, and sections 4, 6, 7 and 8, c. 35, '35, C. S. A., which prohibits in substance discrimination against members of any race in places of public accommodation.

It appears that during 1932, and probably prior thereto, that bathing or swimming in the public bath houses and swimming pools by the colored people in Denver was limited by the city authorities, particularly the manager of improvements and parks and the commissioner of supplies, to certain days in the week. In other words, the rules and regulations for those places pro-

vided for certain days for "white" and other days for "colored" people.

On July 22, 1932, a petition for the alternative writ of mandamus was filed against Lowry and Fogg in their official capacities. In their answer they admitted the segregation as to time and the posting of notices to that effect. Upon issue being joined a hearing was held and the trial court found for the petitioners and issued the writ directed against the said Lowry and Fogg requiring them to refrain and desist from further discrimination contrary to the provisions of said Civil Rights laws. The writ was issued on October 8, 1932.

Subsequently, to wit, June 14, 1934, there appeared the following advertisement in the Denver Post:

"The Denver Post. Thursday, June 14, 1934. Swimming Classes Will Start Monday at Curtis Park Pool.

"Series of swimming lessons for boys and girls who frequent the Curtis park playground, Thirty-second and Curtis Street, will start Monday afternoon under the direction of Lindsey Keeler, William Lounsdale and Miss Louise Lumbar. Miss Lumbar and Keeler are playground instructors and Lounsdale is the pool lifeguard. Both Lounsdale and Keeler are qualified Red Cross examiners.

"Classes for beginners, persons who do not swim at all, will be held from 4 to 4:30 p. m. every day. Life saving courses for swimming will be given from 4:40 to 5:30. Other hours the pool will be open for general swimming. Badges will be awarded those who complete the courses.

"Mondays, Wednesdays and Fridays the pool will be open for girls and women, the latter two days for *white* persons and Mondays for *colored*. Thursdays and Saturdays *white* men and boys will swim and Tuesdays will be reserved for *colored* men and boys."

It does not appear who was responsible for the placing of the advertisement in the paper, nor who paid for it.

Following its publication counsel for the petitioners wrote a letter to Mr. Lowry calling his attention to the

advertisement and also to the court's restraining order which had been issued. In response to that letter Mr. Lowry invited counsel for petitioners to come and see him about it, and suggested that satisfactory arrangements could be made, to which counsel replied that there was no occasion for any appointment or adjustment, but simply to comply with the court order. Apparently no attempt was made to ascertain just what the true situation was, because on August 20th citations of contempt were issued out of the district court against said Lowry and Fogg, and a hearing thereon was held on September 13, 1934, at which the court found that the respondents were not in contempt and dismissed the citations.

■ The evidence as to the actual discrimination is not positive. Several negroes testified that they had gone out to the Curtis Park swimming pool on certain days and were advised by the lifeguard, a man by the name of Lounsdale, that they could not go in swimming on those days, but that they could on other specified days. They also stated that he (Lounsdale) told them that he was employed by the city.

The evidence does not disclose by whom Lounsdale was employed, but it was definitely shown that he was not in the employ of either of the respondents. There is sufficient evidence to indicate that the lower court was entirely justified in finding that at the time these alleged discriminations were taking place Lowry and Fogg knew nothing about it.

There was no question but what the court had jurisdiction and no doubt but what it regularly pursued its authority.

The judgment is accordingly affirmed.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE HILLIARD concur.